IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Jiahui Li, an Individual,<br><br>          Plaintiff,<br><br>vs.<br><br>The Corporations, Partnerships, and Unincorporated Associations Identified on Schedule "A",<br><br>          Defendants. | Case No. 1:25-cv-01948<br><br>Honorable David A. Ezra |

**DEFENDANT SGIBYN OFFICIAL STORE-US'S MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER**

Defendant, SGIBYN Official Store-US ("Defendant"), by and through its undersigned counsel, respectfully moves this Honorable Court to dissolve the Temporary Restraining Order ("TRO") issued on February 26, 2026. In support thereof, Defendant states as follows:

**I. FACTUAL BACKGROUND**

A. Plaintiff's Allegations and Copyright Registration

Plaintiff Jiahui Li is the named registrant of Copyright Registration No. VA 1-547-746, covering a "Group of Unpublished Works" consisting of ten crochet artworks titled "Crochet Antigonon Leptopus and 9 Other Unpublished Works." (Pl.'s First Am. Compl. Ex. 1). The registration's effective date is September 6, 2024. Plaintiff asserts these works were "completed in 2023," yet did not seek registration until September 2024, a full year later. Notably, Plaintiff registered the works as **unpublished**, thereby conceding on the face of the certificate that the works were never publicly disseminated prior to registration. Based on this registration, Plaintiff obtained a TRO against Defendant on February 26, 2026.

1

B. Defendant's Independent Commercial History

Defendant independently conceived, designed, and commercially launched its DIY Crochet Hanging Plant Kits beginning in the summer of 2023, a full year before Plaintiff obtained her copyright registration. The detailed timeline of Defendant's documented development is set forth in Section C below. Critically, at every point during which Defendant designed and launched its products, Plaintiff's works were admittedly unpublished and unregistered. There was accordingly no channel through which Defendant could have accessed the asserted works.

C. Defendant's Documented Independent Creation and Prior Commercialization

Contrary to Plaintiff's implications, Defendant possesses compelling evidence demonstrating the independent creation and commercialization of the DIY Kits long before Plaintiff's purported registration. Defendant's development followed a documented, professional design cycle:

1) July 28, 2023: Completion of original packaging box source files and brand identity. (See Declaration of Yihan Li ("Li Decl.") ¶ 5, Ex. B).

2) August 20, 2023: Finalization of the initial Crochet Pattern text draft. (See Li Decl. ¶ 6, Ex. C).

3) August 29, 2023 - August 31, 2023: Completion of original photography of the physical finished products. (See Li Decl. ¶ 7, Ex. D).

4) August 30, 2023: Completion of final design and print-ready files for the Crochet Guide. (See Li Decl. ¶ 8, Ex. E).

5) September 9, 2023: Product launch and first sales on Amazon. (See Li Decl. ¶ 9, Ex. F).

      6)        September 24, 2023: Publication of instructional videos on YouTube. (See Li Decl. ¶¶ 10-11, Ex. G).

Since the September 2023 launch, Defendant has openly shared its design and assembly process with the global crochet community. As of March 7, 2026, Defendant's educational resources have garnered over 290,000 views and thousands of positive interactions ("likes"). (See Li Decl. ¶¶ 10-11, Ex. G). This extensive public record documents not only Defendant's independent creation but also its active role in engaging with crochet enthusiasts a full year before Plaintiff's registration was ever filed. This timeline directly contradicts the assertion that Plaintiff's works were "completed" and then infringed upon by Defendant in 2023.

## II. LEGAL STANDARD

In the Western District of Texas, a party seeking a temporary restraining order must establish four elements: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury, (3) that the threatened injury outweighs the harm from the TRO, and (4) that the TRO serves the public interest. *Whole Woman's Health v. Paxton,* 264 F.Supp.3d 813 (W.D. Tex. 2017). To satisfy the "success-on-the-merits" prong, plaintiffs must show a "substantial likelihood of success, not certainty." *Id.* When challenging a TRO through a dissolution motion, the defendant need not prove they will ultimately prevail. Instead, the defendant must demonstrate that the plaintiff cannot establish the required substantial likelihood of success on the underlying claim. See *Canal Auth. of Fla. v. Callaway,* 489 F.2d 567, 572-73 (5th Cir. 1974) (establishing the four-element standard for temporary injunctive relief in the Fifth Circuit). Furthermore, independent creation is a complete defense to copyright infringement, where a defendant presents evidence of independent creation, the burden of proving actual copying shifts to the plaintiff. *Positive Black Talk Inc. v. Cash Money Records,* 394 F.3d 357

(5th Cir. 2004).

As demonstrated below, Plaintiff cannot meet this high burden for any of the four elements.

### III. ARGUMENT

A. Plaintiff Cannot Establish a Substantial Likelihood of Success on the Merits Because Defendant Independently Created Its Works Prior to Plaintiff's Registration.

Plaintiff's claim of copyright infringement is fundamentally undermined by Defendant's documented evidence of prior creation and independent development. In copyright infringement cases, independent creation is a complete defense. As the Fifth Circuit established in *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365 (5th Cir. 1981), "a defendant can rebut such a showing [of copying] by offering evidence that his work was independently created without reference to the prior work." The court further clarified that "if defendant offers evidence of independent creation, the plaintiff has the burden of proving that the defendant in fact copied the protected material." *Id.* Because the independent creation defense operates as a denial of copyright infringement, not an affirmative defense, the burden of persuasion remains with the Plaintiff to prove actual copying. *Kipp Flores Architects, LLC v. Pradera SFR, LLC*, 2023 WL 28723, at *4 (W.D. Tex., 2023).

The timeline of events unequivocally demonstrates that Defendant's products were designed, manufactured, and commercially available long before Plaintiff's purported registration and even before Plaintiff's claimed completion date. Plaintiff asserts that its copyrighted works were "completed in 2023." (Pl.'s First Am. Compl. ¶3). However, Defendant's evidence provides the "concrete, documented evidence" that courts seek to support an independent creation defense:

1) August 2023: Defendant designed its products. (See Li Decl. ¶¶ 5-8,Ex. B-E).

4

2) September 9, 2023: Products launched and sold on Amazon. (See Li Decl. ¶ 9, Ex. F).

3) September 24, 2023: The first tutorial video uploaded. (See Li Decl. ¶¶ 10-11, Ex. G).

4) September 6, 2024: Plaintiff's copyright registration becomes effective (one year later).

This commercial activity was well underway a full year before Plaintiff's copyright registration effective date of September 6, 2024. This significant timing discrepancy creates substantial doubt regarding Plaintiff's ability to prove actual copying and directly challenges the *prima facie* validity of Plaintiff's registration.

Under 17 U.S.C. § 410(c), a certificate of registration constitutes only prima facie evidence of validity; it is a rebuttable presumption. As the Fifth Circuit held in *Lakedreams v. Taylor*, 932 F.2d 1103 (5th Cir. 1991), "the certificate does not create an irrebuttable presumption of originality." It is overcome where a defendant provides evidence that the registered facts are inaccurate. Defendant's documented use from August–September 2023 directly refutes the "facts stated in the certificate," specifically Plaintiff's claim that the works were "completed in 2023." While the Supreme Court clarified in *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com*, LLC, 586 U.S. 296 (2019) that a suit may commence only after the Copyright Office registers a work, the gap between Defendant's established commercial presence and Plaintiff's much later registration highlights a material discrepancy.

Furthermore, Plaintiff's assertion that the works were "completed in 2023" while delaying registration until September 2024, only after Defendant's products were already established on the market, raises serious questions under the prima facie presumption afforded by 17 U.S.C. §

5

410(c). That presumption is rebuttable, and it is rebutted here. As the Fifth Circuit held in *Lakedreams v. Taylor,* 932 F.2d 1103 (5th Cir. 1991), the certificate does not create an irrebuttable presumption of originality and is overcome where a defendant provides evidence that the registered facts are inaccurate. Defendant's documented commercial activity from September 2023, a full year before Plaintiff's September 6, 2024 registration, directly rebuts any presumption that Plaintiff was the original or sole creator of the works at issue. On this record, Plaintiff cannot make the "clear showing" of success required for injunctive relief. Moreover, to the extent any similarity exists between the parties' works, that similarity is attributable to the shared structural constraints of the crochet medium, not to copying, a conclusion reinforced by the undisputed absence of any access.

      3. Plaintiff Cannot Establish That Defendant Had Access to the Asserted Works.

      To establish copyright infringement, Plaintiff must prove not only ownership of a valid copyright but also that Defendant actually copied the protected work. *Bridgmon v. Array Sys. Corp.,* 325 F.3d 572, 576 (5th Cir. 2003). Copying is typically established through proof of (1) access to the plaintiff's work and (2) probative similarity. *Id.* Plaintiff cannot establish either element here.

      As to access: Plaintiff's own registration certificate is dispositive. Registration No. VA 1-547-746 identifies the asserted works as a "Group of **Unpublished** Works." Plaintiff has therefore admitted, on the face of its own registration, that the asserted works were never publicly disseminated prior to registration. Plaintiff has produced no evidence of any public exhibition, commercial sale, online listing, or other publication of the asserted works at any time prior to September 6, 2024.

      Defendant began designing its products in July 2023 and commercially launched on

Amazon in September 2023. At that time, Plaintiff's works were admittedly unpublished, unregistered, and not publicly available in any form. There was no channel, wide or otherwise, through which Defendant could have accessed works that had never been made public. Without access, Plaintiff cannot establish copying, and without copying, there is no infringement. The access element fails as a matter of undisputed fact.

  B. Plaintiff Cannot Establish a Substantial Threat of Irreparable Injury.

  Plaintiff has failed to demonstrate a substantial threat of irreparable injury, a critical element for maintaining a TRO. Courts do not presume irreparable harm merely upon a showing of likelihood of success on copyright claims. *AMID, Inc. v. Medic Alert Foundation United States, Inc.,* 241 F.Supp.3d 788 (S.D. Tex. 2017). Here, the validity and ownership of the copyright itself are fundamentally disputed by Defendant's compelling evidence of prior creation and commercialization.

  Moreover, any alleged harm to Plaintiff is speculative rather than substantial. The Fifth Circuit has held that irreparable harm was not established where the copyright covered commercial software sold at a quantifiable price. *Plains Cotton Co-op. Ass'n v. Goodpasture Computer Service, Inc.*, 807 F.2d 1256 (5th Cir. 1987). Similarly, Plaintiff's alleged damages, if any, are primarily economic and can be quantified and remedied through monetary relief should Plaintiff ultimately prevail.

  In addition, Plaintiff's own actions undermine any claim of urgent irreparable injury. Plaintiff claims its works were "completed in 2023" but waited until September 6, 2024, to obtain an effective copyright registration. During this period, Defendant was openly designing, selling products on Amazon since September 9, 2023, and uploading tutorial videos since September 24, 2023. This significant delay in seeking protection, while Defendant's commercial

activity was public and ongoing, strongly suggests that Plaintiff does not face an immediate and irreparable threat that cannot be addressed through ordinary legal channels.

<u>C. The Balance of Hardships Strongly Favors Dissolution.</u>

The balance of hardships strongly favors dissolving the TRO. The continued enforcement of the TRO inflicts severe and irreparable harm upon Defendant, far outweighing any speculative harm to Plaintiff. Defendant is not a "fly-by-night" entity but an established business with products designed, manufactured, and sold on Amazon since September 2023. (See Ex. F). The TRO has abruptly halted Defendant's legitimate commercial operations, leading to severe and irreparable harm including, but not limited to:

    1)    Direct and Quantifiable Revenue Loss: Based on Defendant's verified sales records from January 2026, Defendant is suffering a direct loss of approximately $121.79 USD in net sales per day. (See Li Decl. ¶ 12, Ex. H). This immediate cessation of cash flow threatens the operational viability of the business.

    2)    Irreparable Damage to Marketplace "Weight" and Ranking: In the Amazon ecosystem, the deactivation of a high-performing "main" listing causes a catastrophic drop in organic search ranking and "listing weight." Defendant conservatively estimates that it will require at least two months of renewed marketing and price discounting to recover this lost momentum, representing a projected revenue loss of $7,307.00 USD. These algorithmic losses are unrecoverable through mere monetary damages. (See Li Decl. ¶ 12)

    3)    Severance of Global Community Ties and Goodwill: Defendant has invested heavily in building a community of over 290,000 viewers and thousands of engaged students. (See Ex. G). The TRO does not merely stop sales; it severs the connection

between Defendant and a global audience that relies on Defendant's 300 minutes of instructional content, causing unquantifiable harm to a reputation built over years of transparent, public operation.

4) Collateral Impact on Non-Accused Products: The restrained listing serves as a primary traffic driver for Defendant's other products. Since the TRO was implemented, sales for Defendant's related, non-accused listings have dropped by approximately 30% (an additional loss of roughly $30.00 USD per day), demonstrating the overbroad and punitive nature of the current restraint. (See Li Decl. ¶ 12)

Plaintiff's argument that "where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration" (citing *Lakedreams v. Taylor*) is inapplicable here. While courts reject the principle that infringers can build businesses around infringement, as seen in *Worlds of Wonder v. Veritel Learning Systems, Inc.,* 658 F.Supp. 351 (N.D. Tex. 1986), this principle assumes valid copyright ownership. Defendant's activity is not "likely to be infringing" given the evidence of independent creation and prior commercialization. When Defendant presents credible evidence of prior creation and independent development, Plaintiff cannot claim superior hardship based on a questionable registration that postdates Defendant's documented commercial activity.

The TRO is not preserving the status quo; rather, it is disrupting Defendant's pre-existing and legitimate commercial activities, causing substantial and irreparable harm. Defendant's year-long commercial operations, Amazon sales, and tutorial videos represent a substantial business investment that would be irreparably harmed by an improper TRO. Conversely, Plaintiff's speculative damages can be remedied through monetary relief if Plaintiff ultimately prevails. The

hardship to Defendant from maintaining this TRO, which halts its established and legitimate business, far outweighs any potential, quantifiable harm to Plaintiff.

### D. The Public Interest Favors Dissolution of the TRO.

The public interest factor favors dissolving the TRO, particularly when copyright enforcement would potentially reward false claims of ownership or stifle legitimate competition. While courts generally find that enforcing copyright laws serves the public interest, as noted in *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 259 F.Supp.2d 531 (N.D. Tex. 2003), this principle assumes valid copyright ownership.

Here, Defendant's evidence strongly suggests prior creation and commercial use, casting serious doubt on the validity and enforceability of Plaintiff's copyright claim against Defendant. The public interest is better served by preventing the abuse of copyright registration processes and ensuring that TROs are not used to halt legitimate business operations based on questionable ownership claims. Maintaining the TRO under these circumstances would harm public confidence in fair competition and proper copyright enforcement procedures, allowing a potentially invalid copyright claim to unjustly harm an established business and limit consumer choice.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff has failed to demonstrate any of the four elements required for a temporary restraining order. Defendant's compelling evidence of prior creation and independent development, coupled with the significant timing discrepancy between Defendant's commercial activities (August-September 2023) and Plaintiff's copyright registration (effective September 6, 2024), rebuts any prima facie presumption of validity and shifts the burden to Plaintiff to prove actual copying, which is a burden Plaintiff cannot meet. Furthermore, Plaintiff

has not shown a substantial threat of irreparable injury, the balance of hardships weighs heavily in favor of Defendant, and the public interest would be disserved by the continued enforcement of the TRO.

WHEREFORE, Defendant respectfully requests that this Honorable Court:

1. Grant Defendant's Motion to Dissolve the Temporary Restraining Order;

2. Dissolve the Temporary Restraining Order issued on February 26, 2026;

3. Award Defendant its reasonable attorneys' fees and costs incurred in bringing this Motion; and

4. Grant such other and further relief as this Court deems just and proper.

Defendant's participation in this Motion and any related settlement discussions is without prejudice to, and specifically reserves, all of its rights, claims, and affirmative defenses, including but not limited to those under Fed. R. Civ. P. 12.

Dated: March 10, 2026

Respectfully Submitted,

/s/Mingbo Ye
Mingbo Ye
TX Bar# 24124835
Veritas Light Law Group, P.C.
4340 Von Karman Ave, Suite 290
Newport Beach, CA 92660
Tel: +1 (832)-462-0087
mingboye@veritaslightlaw.com

*Attorney for Defendant SGIBYN Official Store-US*

**CERTIFICATE OF SERVICE**

    I hereby certify that on this March 10, 2026, a true and correct copy of the foregoing Defendant's Motion to Dissolve Temporary Restraining Order was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

 /s/Mingbo Ye
Mingbo Ye
