**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| Jiahui Li, an Individual, | Case No. 1:25-cv-01948 |
| Plaintiff, | |
| v. | |
| The Corporations, Partnerships, and Unincorporated Associations Identified on Schedule "A", | Honorable David A. Ezra |
| | Complaint Filed: December 1, 2025 |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION**

Jiahui Li ("Plaintiff") submits this Memorandum of Law in support of her Motion for Entry of a Preliminary Injunction (the "Motion").

## I.      INTRODUCTION

This case arises from the unauthorized copying and sale of Plaintiff's original crochet plant designs.

Defendants, identified on Schedule A, operate online storefronts through marketplaces such as Amazon, where they advertise, offer for sale, and sell products that reproduce Plaintiff's copyrighted designs. Through these storefronts, Defendants market and sell infringing products to consumers in the United States, including in Texas.

The evidence will show a straightforward sequence of events. The designs were created and developed initially as a set of four characters, and then additional characters were added to the set, making it more complete. There were also minor variations between the initial and the updated

1

sets. Shortly after the initial set was brought to the market, substantially similar products appeared on the market. These products were not authorized or licensed. Despite the fact that one of the Defendants sued here (Defendant Magimuse) held a certificate of copyright for 2023, such certificate was obtained on designs that rather than created by Defendant Magimuse were leaked and "stolen" from Plaintiff.

Plaintiff now seeks injunctive relief to stop that ongoing infringement and to preserve the status quo pending resolution of this case.

## II. STATEMENT OF FACTS

### A. Factual Background

#### a. *Shenzhen Hytd Developed the First-Generation Plant Crochet Designs in 2022*

Plaintiff Jiahui Li is listed as the copyright holder of VAu 1-547-746 and previously worked as a team member in Shenzhen Hytd. *See* Hu Decl. ¶¶ 25-26. From March 2024, Ms.Li stopped working for the affiliate company and Shenzhen Hytd. She expressed the desire not to be involved in the current lawsuit and is executing an assignment of copyright to Shenzhen Hytd, which would cause Shenzhen Hytd to step in as the copyright holder of VAu 1-547-746. *Id.*

For many years, Shenzhen Hytd has been engaged in the design and development of crochet and handmade craft products for consumer markets.

In 2022, while developing crochet toy products, Shenzhen Hytd's founder, Ms. Chengting Hu, identified a gap in the market. *See* Hu Decl. ¶¶ 5–9. Most available crochet products were based on animals or dolls, while plant-inspired designs were relatively uncommon. *Id.* Based on this observation, Shenzhen Hytd began developing a new series of crochet characters centered on plant forms, including cactus and other succulent plants. *Id.*

Shenzhen Hytd and its design team then created the first set of plant crochet characters in

2022. The initial set consisted of four characters, each depicting a stylized plant emerging from a flowerpot and incorporating simple facial features. *See* Hu Decl. ¶ 11, Ex. C. This combination of plant elements and character-like expressions established a distinctive and recognizable design style. *Id.*



Figure 1. First-Generation Plant Crochet Designs
(Copyright Registration No. VAu 1-499-559)

These designs were subsequently commercialized as Shenzhen Hytd's first plant crochet product set, marketed as the "4-Pack Plant Family." Shenzhen Hytd registered these works under Copyright Registration No. VAu 1-499-559. *See* Hu Decl. ¶ 2, Ex. A.

b. *Product Development and Commercialization In 2022*

Following the initial design phase, Shenzhen Hytd further refined the products through production development. *See* Hu Decl. ¶ 12. This included **working with suppliers** to improve crochet structure and material preparation, such as **producing more tightly wound and uniformly arranged yarn**. *Id.* Shenzhen Hytd also required the **use of vacuum-sealed packaging for stuffing materials** to reduce volume and improve packaging efficiency. *Id.* These refinements resulted in a more consistent and commercially viable product. *Id.*

Shenzhen Hytd and its team also designed the complete crochet kit associated with these products, including the packaging, instruction manuals, yarn materials, hooks, and other included

3

components. *See* Hu Decl. ¶¶ 14-16, Ex D. The team revised the instructions multiple times to ensure accessibility for beginners while maintaining the overall design style of the plant characters. *Id.*

In addition, Shenzhen Hytd created instructional video content through the "Crochet Kit" YouTube channel to guide consumers through the crochet process for each product. *See* Hu Decl. ¶ 17, Ex. F.

Shenzhen Hytd launched the first-generation "4-Pack Plant Family" crochet kit on the Crochetta website on December 8, 2022, with the first sale occurring on December 30, 2022. *See* Hu Decl. ¶ 18, Ex. G.

    c. *Shenzhen Hytd Developed the Second-Generation Plant Crochet Designs in 2023*

Following the successful launch of the first-generation "4-Pack Plant Family," Shenzhen Hytd continued developing additional plant characters based on the same overall design concept and visual style.

In early February 2023, Shenzhen Hytd and its design team created an expanded set of plant crochet characters building on the original designs. The second generation introduced additional plant varieties and refined visual elements while maintaining the same core concept—plants emerging from flowerpots with expressive faces. *See* Hu Decl. ¶ 20, Ex. H.

The second-generation set consisted of six plant characters and was developed through multiple rounds of revisions to refine the overall appearance and consistency of the designs.





Figure 2. Second-Generation Plant Crochet Design Sketches
*(Date: February 15, 2023)*

 

       *d.*  *Product Development and Commercialization In 2023*

Shenzhen Hytd moved quickly from design to production. Based on the finalized sketches, Shenzhen Hytd produced sample versions of the second-generation designs as early as February 16, 2023. These samples were reviewed internally with the design team, and further refinements were made through ongoing discussions. *See* Hu Decl. ¶¶ 21-22, Ex. I.



Figure 3. WeChat Screenshot with Designer on February 16, 2023

These second-generation designs were later registered under Copyright Registration No. VAu 1-547-746, the registration at issue in this case. *See* Hu Decl. ¶ 3, Ex. B.

### e. *Infringing Products and Activities*

Shenzhen Hytd's plant crochet products quickly gained attention in the market after their release. As the Crochetta plant crochet kits became more widely sold online, similar products began appearing on the market that copied these designs.

In December 2023, Shenzhen Hytd discovered multiple products being sold that closely replicated the appearance of its plant crochet characters. These products reproduced the same core visual elements, including the plant characters emerging from flowerpots with facial features and similar crochet structures. *See* Hu Decl. ¶ 27, Ex. K.

On April 27, 2024, Shenzhen Hytd further discovered that **a former supplier was**

**displaying identical crochet plant products and packaging at an exhibition**. *See* Hu Decl. ¶ 29, Ex. L.   Ms. Hu, as founder of Shenzhen Hytd, immediately contacted the supplier and demanded removal of the products, as the use and disclosure of these designs violated the parties' confidentiality agreement. *See* Hu Decl. ¶ 30.

  *f.* *Similarities in Packaging, Materials, and Product Configuration*

Shenzhen Hytd observed that certain infringing products on the market share similarities with its own products beyond the underlying crochet designs. *See* Hu Decl. ¶ 31. These similarities extend to product packaging, material preparation, and overall kit configuration. *Id.*

For example, some infringing products are marketed as complete crochet kits with **packaging formats and layouts similar to Shenzhen Hytd's products**, including the presentation of finished crochet plant characters alongside included materials such as yarn, hooks, stuffing, and instruction manuals.  *See* Hu Decl. ¶ 32, Ex. M.

Shenzhen Hytd also observed that certain infringing products **use tightly wound yarn balls with a consistent and compact structure**. Based on Shenzhen Hytd's experience in developing and manufacturing crochet kits, this type of yarn preparation typically requires **specialized machinery and controlled production processes**, and is not commonly found in the market.  *See* Hu Decl. ¶32, Ex. N.

In addition, Shenzhen Hytd observed that some infringing products include stuffing materials packaged in a **compressed, vacuum-sealed** form. During product development, Shenzhen Hytd specifically required its supplier to adopt this vacuum-sealing method to reduce volume and improve packaging efficiency, which required specialized equipment. See Hu Decl. ¶33, Ex. O.

These similarities in packaging, materials, and product configuration were observed across

multiple infringing listings identified after the release of Shenzhen Hytd's products. *See* Hu Decl. ¶¶ 35-36.

Since 2024, Shenzhen Hytd has filed multiple complaints through Amazon to address infringing listings and protect its intellectual property rights. *See* Hu Decl. ¶ 35. Despite these efforts, numerous unauthorized and infringing products continue to appear on online marketplaces. *Id.*

As a result, Plaintiff and Shenzhen Hytd have been unable to effectively control the distribution of these designs, and the infringement remains ongoing. *See* Hu Decl. ¶ 36.

### B. Procedural Background

On February 18, 2026, the Court granted Plaintiff's ex parte application for a Temporary Restraining Order ("TRO"), enjoining Defendants' infringing conduct and authorizing measures to preserve assets. *See* ECF No. 12. The Court later extended the TRO through March 18, 2026. *See* ECF No. 14.

Plaintiff's counsel sent enforcement requests to Amazon and Temu on February 19, 2026. These platforms complied on February 24, 2026, by freezing Defendants' accounts. *See* Ouyang Decl. ¶ 3.

Following entry of the TRO, Plaintiff proceeded with service, and summonses were issued and executed on Defendants. *See* ECF No. 16. All Defendants identified on Schedule A were served on March 13, 2026. *See* ECF No. 27. Several Defendants have since appeared and moved to dissolve the TRO, while also seeking expedited relief.

On March 18, 2026, Plaintiff filed a motion seeking a further extension of the TRO. *See* ECF No. 31. The Court set an emergency hearing for March 18, 2026 to address Defendants' motions to dissolve the TRO and Plaintiff's request for an extension. *See* ECF No. 32.

### III. ARGUMENT

#### A. Preliminary Injunction Is Warranted

##### a. *Standard for Preliminary Injunction*

A preliminary injunction is appropriate if the plaintiff establishes "(1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest." *See Brennan's, Inc. v. Brennan,* 289 F. App'x 706, 707 (5th Cir. 2008) (citing *Speaks v. Kruse,* 445 F.3d 396, 399–400 (5th Cir. 2006)).

##### b. *Plaintiff Will Likely Succeed on Its Copyright Infringement Claims*

A plaintiff is likely to succeed on a claim for copyright infringement if the plaintiff can establish: (1) ownership in a valid copyright and (2) copying by the defendant. See *Batiste v. Lewis*, 976 F.3d 493, 502 (5th Cir. 2020) (quoting *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007)). There are two ways to prove copying: (1) with proof of direct evidence of copying or (2) through circumstantial evidence demonstrating that the defendant had access to the copyrighted work and that the two works are "probatively" similar. *See Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141–42 (5th Cir. 2004). Access need not be shown in some cases where "the two works are so strikingly similar as to preclude the possibility of independent creation." *Id.* at 142 (citing *Positive Black Talk Inc. v. Cash Money Recs., Inc.*, 394 F.3d 357, 368–70 (5th Cir. 2004)).

Here, both elements are satisfied.

First, Plaintiff owns valid copyrights in a group of original crocheted design works registered with the United States Copyright Office under Registration No. VAu 1-547-746. The registered works include original crocheted designs such as *Crochet Antigonon Leptopus*, *Crochet*

*Nephrolepis Exaltata*, *Mini Succulent Buddy*, *Optimistic Mini Axolotl*, and other crocheted character and plant designs. This registration constitutes prima facie evidence of the validity of the copyrights and of Plaintiff's ownership of the protected works. *See Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004).

Additionally, Plaintiff has produced extensive evidence documenting the development of these works, including dated design sketches, sample production, internal communications reflecting iterative revisions, and a complete timeline of commercialization. This evidence shows that the designs were conceived, developed, and refined by Shenzhen Hytd beginning in 2022 and continuing through early 2023. *See* Hu Decl. ¶¶ 8–27, Exs. A–J.

Second, the record demonstrates both access and copying.

As to access, Plaintiff's designs were developed in coordination with its manufacturing process and disclosed to suppliers during product development. Shenzhen Hytd required specific production methods for its crochet kits, including tightly wound yarn prepared through controlled processes and the use of vacuum-sealed packaging for stuffing materials to reduce volume and improve packaging efficiency. *See* Hu Decl. ¶¶ 15–16, 32-34. These features are not commonly found in ordinary crochet kits and reflect special and deliberate production decisions made during Plaintiff's development process.

After Plaintiff's products were released, multiple infringing products appeared on the market incorporating the same combination of features. In addition to copying the overall appearance of Plaintiff's crocheted plant characters, these products replicate similar packaging formats, include similarly arranged kit components, use tightly wound yarn of a consistent structure, and incorporate compressed, vacuum-sealed stuffing materials. *See* Hu Decl. ¶¶ 32-34.

Further, Shenzhen Hytd identified a former supplier displaying identical products and

packaging at an exhibition. See Hu Decl. ¶ 30. **This evidence, combined with the presence of shared, non-common manufacturing and packaging features, supports a strong inference that Defendants had access to Plaintiff's designs through the same or a closely related supply chain.**

As to copying, the similarities between Plaintiff's copyrighted works and Defendants' products are substantial and specific. Defendants' products reproduce the same distinctive crocheted plant characters, including the shapes, proportions, and expressive elements embodied in Plaintiff's registered works. These similarities are sufficiently close that they cannot be explained by coincidence or independent creation.

| Shenzhen Hytd's 2022 Copyrighted Work | Shenzhen Hytd's 2023 Copyrighted Work | Defendant's Work |
|---|---|---|
|  | | |
| Figure 4. Comparion of Shenzhen Hytd's and Defendant's Crochet Plant Designs | | |

Taken together, the evidence demonstrates that Defendants had access to Plaintiff's copyrighted works and produced products that are substantially similar in both design and execution. Plaintiff has therefore established a substantial likelihood of success on the merits of its copyright infringement claims.

      c. *There is a Substantial Threat That Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief*

Courts in the Fifth Circuit have found that "[w]hen a plaintiff seeks an injunction under the Copyright Act, the plaintiff establishes a rebuttable presumption of irreparable harm when the plaintiff shows that a valid copyright has been infringed." See *MGE UPS Sys., Inc.*, 2004 WL 2187143, at *2 (citing *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1187 (5th Cir. 1979) and *Olan Mills, Inc. v. Eckerd Drug of Tex., Inc.*, 1988 WL 161314, at *2 (N.D. Tex. 1998)). Further, where a plaintiff proves a substantial likelihood of success on the merits of a copyright infringement claim, "a preliminary injunction should not be denied simply because plaintiffs can recover monetary damages." *Olan Mills, Inc.*, 1988 WL 161314, at *2.

Here, Defendants' infringement has caused, and continues to cause, irreparable harm to Plaintiff. Beginning in December 2023, counterfeit products copying Plaintiff's crochet designs began appearing on the market. Since then, Plaintiff has made repeated efforts to remove infringing listings, including filing multiple complaints through Amazon. *See* Hu Decl. ¶ 36. These efforts, however, have had limited effect, as new infringing listings continue to appear.

The ongoing and widespread nature of the infringement has made it difficult for Plaintiff to control the use and distribution of its designs. Defendants' conduct allows unauthorized products to remain in the marketplace, directly competing with Plaintiff's products and diminishing the value of Plaintiff's original designs. As a result, Plaintiff faces continuing harm to its business, brand, and goodwill.

This harm is not readily quantifiable and cannot be adequately remedied by monetary damages alone. Without injunctive relief, Defendants can continue to offer infringing products, and additional infringing listings are likely to appear. Under these circumstances, Plaintiff is entitled to a presumption of irreparable harm and to preliminary injunctive relief.

> d. *The Balance of Harm Tips in Plaintiff's Favor*

Courts in this Circuit have found that the balance of hardships weighs in a plaintiff's favor when the defendant is infringing the plaintiff's copyright. *See*, e.g., *Olan Mills, Inc.*, 1988 WL 161314, at *3 (finding that the defendant's infringing conduct resulted in the loss of a primary source of the plaintiff's income, and that the defendant will suffer minimal hardship if enjoined from further infringing on the plaintiff's copyright); *see also Worlds of Wonder, Inc. v. Veritel Learning Sys., Inc.*, 658 F. Supp. 351, 357 (N.D. Tex. 1986) (finding that even if an infringing defendant could establish that an "injunction would have a devastating effect on its business," the court should not permit an infringer to construct its business around its infringement and deny preliminary injunctive relief).

Plaintiff is entitled to the protection of her intellectual property, *i.e.*, copyrighted designs, and she continues to suffer hardship as long as Defendants use, reproduce, and display the infringing designs on their products and online storefronts. As willful infringers, Defendants are entitled to little equitable consideration, because the only hardship they would face is being required to cease their infringing conduct. Accordingly, the balance of hardships weighs decisively in Plaintiff's favor, and equity requires that Defendants be ordered to cease their infringing activities.

### e. *Issuance of the Injunction Is in the Public Interest*

There is a public interest in preserving rights provided by federal copyright law. *Lakedreams v. Taylor*, 932 F.2d 1103, 1110 (5th Cir. 1991). Further, courts in this district have found that the public interest "is always served by requiring compliance with Congressional statutes . . . and by enjoining [infringement]." *See HeartBrand Holdings, Inc. v. Whitmer*, No. SA-19-CV-00358-HJB, 2020 WL 6266010, at *3 (W.D. Tex. July 28, 2020) (citing TGP *Franchising, LLC v. Schooley Media Ventures, LLC*, No. SA-16-CA-546-FB, 2016 WL 10567692, at *5, 2016

U.S. Dist. LEXIS 193271, at *11–12 (W.D. Tex. Dec. 6, 2016)). The public interest factor thus also weighs in favor of an injunction because the public interest—and the Copyright Act itself—would be undermined if Defendants' infringing conduct is allowed to stand. Permanently enjoining Defendants will therefore actually advance the public interest by protecting copyrighted works and maintaining the integrity of the Copyright Act.

### B. The Equitable Relief Sought Is Appropriate

The Copyright Act specifically authorizes the Court to "grant . . . injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "Preliminary injunctions are a common judicial response to the imminent infringement of an apparently valid copyright." *See Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1187 (5th Cir. 1979). Indeed, "preliminary injunctions are a more common remedy in copyright infringement cases because the core value of the rights afforded by the Copyright Act is that they are 'exclusive.'" *See Olan Mills, Inc.*, 1988 WL 161314, at *2 (citing 17 U.S.C. § 106).

Federal Rule of Civil Procedure 65(d)(2)(C) also authorizes this Court to bind any third parties "who are in active concert or participation" with Defendants or their agents and who receive actual notice of the Court's order. Such third parties include the relevant e-commerce platforms, payment processors, and financial institutions connected to Defendants' online storefronts and financial accounts. The facts of this case warrant such relief.

#### a. *An Order Preliminarily Enjoining Defendant's Unauthorized Reproduction and Sale of Products Using Plaintiff's Copyrighted Designs Is Appropriate*

Plaintiff respectfully requests an order requiring Defendants to immediately cease all use of Plaintiff's copyrighted designs in connection with their infringing products and online storefronts. The Copyright Act expressly provides that "[a]ny court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it

may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).

In light of the extensive evidence of Defendants' acts of infringement, Plaintiff respectfully requests that this Court issue an order preliminarily restraining Defendants from further reproduction, distribution, and display of Plaintiff's copyrighted designs pursuant to Fed. R. Civ. P. 65 and 17 U.S.C. § 502.

As discussed above, such relief is necessary to stop the ongoing harm to Plaintiff and to prevent Defendants from continuing to benefit from the unauthorized use of Plaintiff's copyrighted designs. The need for preliminary injunctive relief is particularly acute in the modern e-commerce marketplace, where infringers can operate on an international scale and anonymously through online platforms. Without injunctive relief, Defendants may continue to market and sell infringing products and transfer proceeds derived from those sales beyond the reach of the Court.

A preliminary injunction immediately enjoining Defendant's unauthorized and illegal reproduction and sale of products using Plaintiff's copyrighted designs is therefore appropriate and necessary to preserve Plaintiff's rights and the integrity of the Copyright Act.

### b. *An Order Preventing the Fraudulent Transfer of Assets Is Appropriate*

Plaintiff will ultimately be entitled to an equitable accounting of profits derived from Defendant's sale of products incorporating Plaintiff's copyrighted designs. Plaintiff thus respectfully requests a preliminary injunction restraining Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits is not impaired.

Specifically, on information and belief, Defendants operate through online marketplace storefronts and associated payment processors, which makes it easy for Defendants to transfer or conceal funds derived from the sale of infringing products if preliminary injunctive relief is not ordered. Without an asset restraint, Defendants could quickly transfer funds outside the jurisdiction

15

of this Court, which would render any accounting by Plaintiff futile.

An asset-restraining order limiting the transfer of Defendant's assets is therefore critical to maintain the status quo and preserve Plaintiff's right to an equitable accounting. In addition, the amount of damages to which Plaintiff is entitled, as set forth in the First Amended Complaint, far exceeds any amount likely contained in Defendant's merchant accounts or other financial accounts on the day the accounts are frozen.

The Fifth Circuit and the Supreme Court have authorized pre-judgment asset restraints in cases where the plaintiff requests preliminary relief. *See, e.g., United States v. First Nat. City Bank*, 379 U.S. 378, 385 (1965) (the temporary injunction issued by the district court was appropriate to prevent dissipation of assets); *Deckert v. Indep. Shares Corp.*, 311 U.S. 282, 290 (1940) (a district court has sufficient equitable powers to preliminarily freeze a defendant's assets to preserve the status quo pending final determination).

Moreover, the Federal Rules of Civil Procedure authorize this Court to bind third parties who are in active concert with Defendant and who receive notice of an order freezing Defendant's assets. *See* Fed. R. Civ. P. 65(d)(2)(C).

Although Plaintiff seeks damages for Defendant's infringing conduct, Plaintiff also seeks equitable relief in the form of an injunction restraining further infringement and an injunction freezing and preserving illegally obtained assets. Because equitable relief is sought, this Court may exercise its equitable powers to preserve the status quo by ordering an asset restraint pending resolution of this case.

Furthermore, Plaintiff has demonstrated a likelihood of success on the merits of her claims, that she has suffered and will continue to suffer irreparable harm from Defendants' infringing conduct, and that Defendants could easily transfer funds derived from their infringing sales if such

assets are not restrained. An asset-restraining order is therefore necessary to preserve the availability of equitable relief and prevent the dissipation of assets before final judgment.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court convert the existing Temporary Restraining Order into a Preliminary Injunction enjoining Defendant from continuing its infringement of Plaintiff's copyrighted designs. Plaintiff further requests that the Court maintain the asset restraints previously ordered and grant such additional relief as the Court deems just and proper to preserve the status quo and prevent further irreparable harm.

Dated: March 20, 2026                                    /s/ Marjorie Ouyang
                                                         Respectfully submitted
                                                         Valley & Summit Law
                                                         One Park Plaza, Suite 600
                                                         Irvine, CA 92614
                                                         *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be provided to any counsel of record through the CM/ECF system. To the extent required, service will also be effected in accordance with the Court's prior Orders.

Dated: March 20, 2026                    Respectfully submitted

*Marjorie Ouyang*
Marjorie Ouyang
Valley & Summit Law
One Park Plaza, Suite 600
Irvine, CA 92614
Marjorie.Ouyang@valleysummitlaw.com
Attorney for Plaintiff